UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-80192-Cannon/McCabe

SAEED AZAM,

  Plaintiff,

v.

PALM BEACH COUNTY,

  Defendant.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Defendant's Motion to Dismiss Plaintiff's Amended Complaint, which was referred to the undersigned by United States District Judge Aileen M. Cannon.  (DE 7, DE 12).  For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

This is an employment discrimination case.  The Court accepts the following facts as true, taken from Plaintiff's Amended Complaint.  (DE 8).  Plaintiff is a "brown-skinned, Asian, Muslim male of Bangladeshi national origin."  (DE 8 ¶¶ 126, 128).  On or about January 2, 2023, Defendant hired Plaintiff as a firefighter trainee.  (DE 8 ¶¶ 11, 13, 14, 43, 74, 102, 136).  Plaintiff alleges he suffered various forms of discrimination during his training, including the following:

-  An unnamed supervisor told Plaintiff, during a medical exam, that "we usually don't get names like yours."  (DE 8 ¶¶ 22, 54, 111, 154).

-  Another one of Plaintiff's supervisors, Captain Mark Davis, who was white, asked Plaintiff where he was from, what religion he practiced, and whether he ate bacon.  (DE 8 ¶¶ 23, 46, 54, 77, 83, 112, 146).  The Amended Complaint explains that

Muslims do not eat pork products such as bacon.  (DE 8 ¶¶ 46, 77).  Captain Davis then told Plaintiff that "you're missing out on bacon."  (DE 8 ¶¶ 23, 54, 83).

- Captain Davis also told Plaintiff that "it looks like you do not want to be here." (DE 8 ¶¶ 23, 54, 83, 112, 146).  Plaintiff took this to be a comment on his physical appearance.  (DE 8 ¶¶ 23, 54, 83, 112, 146).

- Captain Davis also "yelled" at Plaintiff and "belittled" him in front of other recruits.  (DE 8 ¶¶ 16, 19, 47, 78, 105, 139).  Other non-dark-skinned, non-Muslim recruits did not receive similar treatment.  (DE 8 ¶¶ 17, 48, 79, 106, 147).

- Captain Davis "scolded" Plaintiff for mistakes but did not scold other non-dark-skinned, non-Muslim recruits for similar or worse mistakes.  (DE 8 ¶¶ 17, 48, 79, 106, 140).

- Captain Davis also subjected Plaintiff to "unfair criticism" in drills and other exercises.  (DE 8 ¶¶ 19, 50, 81, 108, 142).  Other non-dark-skinned, non-Muslim recruits did not receive similar treatment.  (DE 8 ¶¶ 19, 50, 81, 108, 142).

- An unnamed supervisor also accused Plaintiff of falsifying his vital statistics after performing an exercise, while other non-dark-skinned, non-Muslim recruits did not receive similar treatment.  (DE 8 ¶¶ 26, 57, 86, 115).

According to Plaintiff, the discrimination against him culminated on February 13, 2023, when Defendant terminated his employment, allegedly for failing a search-and-rescue task.  (DE 8 ¶¶ 29, 60, 89, 118).  According to Plaintiff, other non-dark-skinned, non-Muslim trainees performed similarly or worse on the same search-and-rescue task but were not terminated.  (DE 8 ¶¶ 30, 61, 90, 119).  Plaintiff alleges that a white trainee "dropped a ladder" and still passed the search-and-rescue task, while Plaintiff was discharged.  (DE 8 ¶¶ 31, 62, 120, 154).

Based on these allegations, Plaintiff brings the following discrimination claims based on his race, color, national origin, and religion:

| Count | Claim |
|-------|-------|
| 1 | Unlawful Discharge Based on Race and Color in Violation of the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq. ("FCRA") |
| 2 | Unlawful Discharge Based on National Origin in Violation of the FCRA |
| 3 | Unlawful Discharge Based on Religion in Violation of the FCRA |
| 4 | Hostile Work Environment Based on Race, Color, National Origin, and Religion in Violation of the FCRA |
| 5[1] | Unlawful Discharge Based on Race, Color, National Origin, and Religion in Violation of 42 U.S.C. § 1983 |

(DE 8).

## II.   LEGAL STANDARD

By way of this Motion, Defendant seeks dismissal of all five counts pursuant to Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, the Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff.  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, "a complaint must contain sufficient factual

---

[1] Plaintiff incorrectly labeled his § 1983 claim as Count 4.  The Court will correct this mistake and refer to the claim as Count 5 throughout this Report and Recommendation.

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.    <u>DISCUSSION</u>

Defendant raises several arguments in support of dismissal.  The Court will address each argument in turn.

### A.    **Shotgun Pleading**

Defendant first seeks dismissal of all five counts based on the rule against shotgun pleadings.  (DE 12 at 9-10).  Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief."  Also, pursuant to Fed. R. Civ. P. 10(b), each claim must be presented in separate, numbered paragraphs, "limited as far as practicable to a single set of circumstances," with "each claim founded on a separate transaction or occurrence ... stated in a separate count."  Complaints that violate Rules 8(a)(2) and 10(b) are known as "shotgun pleadings."  *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).  Shotgun pleadings fail to give defendants "adequate notice of the claims against them and the grounds upon which each claim rests."  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1323 (11th Cir. 2015).  Shotgun pleadings commonly suffer from one or more of the following deficiencies:

> (1)    they contain multiple counts, with each count adopting the allegations of all preceding counts, thereby causing each successive count to carry all that came before, and leaving the last count to be a combination of the entire complaint;
>
> (2)    they are replete with conclusory, vague, and immaterial allegations not obviously connected to any particular cause of action;
>
> (3)    they do not separate each cause of action into a different count; and

(4)        they assert multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions.

*Id.* at 1321-1323.

The Court has reviewed the Amended Complaint and finds that it does not violate the rule against shotgun pleadings.  The Amended Complaint alleges five separate counts, each under a separate legal theory, with separate supporting allegations against a single Defendant.  In the Court's view, the Amended Complaint provides Defendant with adequate notice of the claims against it and the grounds upon which each claim rests.  As such, the motion should be denied as to this argument.

       **B.**       **Failure to State a Claim**

Defendant next urges dismissal of all five counts for failure to state a claim upon which relief can be granted.  (DE 12 at 11).  The Court will address each argument in turn.

       **1.**       **Counts 1, 2, & 3 (Unlawful Discharge Based on Race, Color, National Origin, and Religion)**

Defendant first seeks dismissal of Counts 1, 2, and 3, which allege claims of unlawful discharge based on race, color, national origin, and religion, all in violation of the FCRA.  In support of dismissal, Defendant argues that these counts fail to allege the existence of a "similarly situated comparator" as would be required to establish a prima facie case of discrimination under the familiar burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), commonly utilized in Title VII cases.[2]  (DE 12 at 12).

The Court rejects this argument for two reasons.  First, the Amended Complaint identifies a similarly situated comparator.  At paragraphs 31, 62, 120 and 154, Plaintiff alleges that a white

---

[2] Counts 1, 2, and 3 arise under the FCRA not Title VII.  As a general rule, however, courts construe FCRA cases under the same analytical framework as Title VII cases.  *Holland v. Gee*, 677 F.3d 1047, 1054 n.1 (11th Cir. 2012).

trainee "dropped a ladder" yet still passed the search-and-rescue task and was allowed to keep his job.  Meanwhile, Plaintiff failed the search-and-rescue task and was discharged.  (DE 8 ¶¶ 29, 60, 89, 118).  The Amended Complaint does not explain the error that caused Plaintiff to fail the search-and-rescue task, making it difficult to compare Plaintiff's error to the white trainee's dropped later.  Nevertheless, the Court finds this allegation sufficient to show a *McDonnell Douglas* comparator at this stage of the case.

Second, and more importantly, a discrimination plaintiff need not plead the elements of a *McDonnell Douglas* prima facie case to survive a motion to dismiss.  As the Eleventh Circuit has made clear, the *McDonnell Douglas* framework is not a pleading standard to be applied at the motion-to-dismiss stage.  *See Davis v. Miami-Dade Cnty.*, No. 23-12480, 2024 WL 4051215, at *3 (11th Cir. Sept. 5, 2024) (noting that "*McDonnell Douglas* is 'the wrong legal standard' to apply at the pleading stage").  Instead, it is an evidentiary tool applied at summary judgment to determine whether a genuine issue of fact remains for trial.  *Id.* (reversing district court for inappropriate use of *McDonnell Douglas* at the motion-to-dismiss stage),

The Eleventh Circuit has identified the correct pleading standard as follows:

Instead, the correct pleading standard in a discrimination case is the same as in any other case: 'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  This plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  In a discrimination case, that means that the complaint "need only provide enough factual matter (taken as true) to suggest intentional ... discrimination." *Surtain*, 789 F.3d at 1246 (quotations omitted).

*Id.*

Applying this standard here, the Court finds that Counts 1, 2, and 3 state plausible claims of discrimination.  According to the Amended Complaint, Plaintiff's supervisors, for whatever

reason, made a number of comments regarding his name, national origin, religion, and religious eating habits, including the following:

- A supervisor told Plaintiff that "we usually don't get names like yours."  (DE 8 ¶¶ 22, 54, 111, 154).

- A supervisor asked Plaintiff where he was from.  (DE 8 ¶¶ 23, 46, 54, 77, 83, 112, 146).

- A supervisor asked Plaintiff his religion.  (DE 8 ¶¶ 23, 46, 54, 77, 83, 112, 146).

- A supervisor asked Plaintiff whether he ate bacon.  (DE 8 ¶¶ 23, 46, 54, 77, 83, 112, 146).

- A supervisor told Plaintiff that, "you're missing out on bacon."  (DE 8 ¶¶ 23, 54, 83).

When combined with Plaintiff's allegations of unfavorable workplace treatment, the Court finds these comments sufficient to give rise to a plausible inference of discriminatory animus. The Court acknowledges that these comments could also be interpreted as non-discriminatory expressions of curiosity regarding a new trainee and the trainee's background.  At this stage of the case, however, the Court must construe these allegations in the light most favorable to Plaintiff's claims.  The Court therefore finds that Counts 1, 2, and 3 state plausible claims of discrimination.  As such, the motion should be denied as to these counts.

## 2.      Count 4 (Hostile Work Environment)

Defendant next urges dismissal of Count 4, which alleges a claim for hostile work environment.  In support, Defendant argues that Count 4 fails to allege facts of sufficient severity or pervasiveness to rise to the level of a hostile work environment.  (DE 12 at 14).  As set forth below, the Court agrees.

To state a hostile work environment claim, a plaintiff must allege facts that show (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based upon his protected status; (4) the harassment complained of affected a

term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt, remedial action.  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002).  To determine whether harassment is severe and pervasive enough to alter the conditions of employment, courts look to several factors including: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.  *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1246 (11th Cir. 1999).

To be actionable, the environment must be both objectively offensive—one that a reasonable person would find hostile or abusive—and subjectively offensive—one that the victim did in fact perceive to be so.  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22 (1993).  Courts must apply these demanding standards for judging abusive working environments to prevent civil rights statutes from being converted into "general civility codes."  *Oncale v. Sundowner Offshore Servs.*, Inc., 523 U.S. 75, 81 (1998).

The Court has reviewed the allegations of Count 4 and finds them insufficient to state a plausible claim for hostile work environment.  Plaintiff complains, *inter alia*, that his supervisors yelled at him, scolded him, unfairly criticized him, and made remarks concerning his religion.  (DE 8 ¶¶ 23, 54, 83).  This behavior, while unprofessional, does not rise to the level of a hostile work environment under the law.  Indeed, courts have dismissed or granted summary judgment on hostile-work-environment claims that involved far more egregious workplace behavior.  *See, e.g., Godoy v. Habersham County*, 211 F. App'x 850, 853-854 (11th Cir. 2006) (affirming summary judgment where supervisor subjected South-American plaintiff to racial slurs and told him "to go back to his boat and sail to South America where he belongs"); *Barrow v. Ga. Pacific Corp.*, 144 F. App'x 54, 57 (11th Cir. 2005) (affirming summary judgment where supervisors

called plaintiff the "N word," threatened to "kick [his] black ass," and where other employees displayed a rebel flag, a KKK symbol, and a noose in front of him); *Thompson v. City of Miami Beach, Fla.*, 990 F. Supp. 2d 1335, 1341 (S.D. Fla. 2014) (dismissing claim where supervisor repeatedly referred to plaintiff using the "N word").  The motion should be granted as to Count 4.

### 3.    Count 5 (§ 1983 Race Discrimination)

Count 5 alleges a violation of 42 U.S.C. § 1983, which provides a remedy against "every person" who, under color of state law, deprives another of rights secured by the Constitution and laws of the United States.[3]  Here, Plaintiff alleges that Defendant violated his constitutional rights by terminating his employment based upon his race, color, national origin, and religion.  (DE 8 ¶¶ 1, 91, 97, 121, 132, 155).  As set forth below, the Court finds that Count 5 fails to state a plausible claim upon which relief can be granted.

To state a § 1983 claim, Plaintiff must allege facts that show (1) a violation of a constitutional right, (2) committed by a person acting under color of state law.  *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005).  Here, Plaintiff has not chosen to sue an individual person but has instead chosen to sue the municipality of Palm Beach County itself.  In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 690 (1978), the Supreme Court recognized that municipalities qualify as "persons" subject to suit under § 1983.  To demonstrate liability against a municipality, however, a plaintiff must do more than show that the municipality employed a person who committed a constitutional violation, as the doctrine of respondeat superior does not apply to § 1983 actions. *Id.* at 691.  "[A] city is not vicariously liable under § 1983 for the constitutional torts of its agents:

---

[3] Defendant urges the Court to treat Count 5 as a claim under Title VII rather than under § 1983. (DE 12 at 12).  The Court declines to do so.  Plaintiff, as the master of his own pleading, chose to allege a § 1983 claim, not a Title VII claim.  (DE 8 at 19).

It is only liable when it can be fairly said that the city itself is the wrongdoer." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992).

To this end, the Supreme Court has defined three narrow circumstances under which a municipality can be held liable under § 1983.  First, *Monell* recognizes that § 1983 liability attaches when the municipality itself adopts a formal policy, rule, or regulation that causes a constitutional violation.  436 U.S. at 658.  Second, *Monell* recognizes that municipalities may follow informal customs or practices that cause constitutional violations even though such customs or practices have "not received formal approval through the body's official decisionmaking channels." *Id.* at 690-91 (cleaned up).  To prove a custom or practice, a plaintiff must establish a widespread pattern of conduct "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (cleaned up).  Third, the Supreme Court recognizes "limited circumstances" under which "failure to train" can give rise to § 1983 liability. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).  Specifically, inadequate training "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *Id.* at 388.

Applying these standards, the Court finds that Count 5 fails to allege facts demonstrating § 1983 *Monell* liability under any recognized theory.  Plaintiff has not alleged facts to show that Defendant's alleged discriminatory conduct was caused by (1) an official policy, rule, or regulation adopted by Defendant; (2) an informal, but widespread, custom or practice; or (3) a training deficiency.  As such, the motion should be granted as to Count 5.[4]

---

[4] Defendant also seeks dismissal of the § 1983 claim based on the statute of limitations, but the Court rejects this argument.  Because § 1983 claims "are best characterized as personal injury actions," they are governed by the state statute of limitations for such claims. *Wilson v. Garcia*, 471 U.S. 261, 280 (1985).  Florida law imposes a four-year statute of limitations on claims of negligence or personal injury. *See* § 95.11(3), Fla. Stat.  According to the Amended Complaint,

### C.      Exhaustion Requirement for Count 3 (Religious Discrimination)

Finally, Defendant also urges dismissal of Count 3 (the religious discrimination claim) based on failure to exhaust administrative remedies.  (DE 12 at 15).  In particular, Defendant argues that Plaintiff failed to exhaust his religious discrimination claim because he failed to include that claim in his EEOC charge of discrimination.  (DE 12 at 15).  As set forth below, the Court disagrees.

Prior to bringing a discrimination claim under Title VII (or the FCRA), a plaintiff must "exhaust certain administrative remedies," which begin with a timely charge of discrimination filed with the EEOC.  *See EEOC v. Joe's Stone Crabs, Inc*., 296 F.3d 1265, 1271 (11th Cir. 2002). After filing, the statute affords the EEOC an opportunity to investigate the charge and attempt to mediate a conciliation agreement, after which, the EEOC issues a notice to the plaintiff, commonly referred to as a "right-to-sue letter."  42 U.S.C. § 2000e-5(f)(1).  The purpose of the exhaustion requirement is to afford the EEOC "the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts."  *Gregory v. Ga. Dep't of Human Res*., 355 F.3d 1277, 1279 (11th Cir. 2004) (cleaned up).

As a general rule, the scope of a Title VII (or FCRA) complaint must be limited to "the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."  *Id*. at 1280.  In this regard, the Eleventh Circuit has cautioned that "the scope of an EEOC [charge] should not be strictly interpreted."  *Id*.  As such, a Title VII (or FCRA) complaint may encompass any kind of discrimination "like or related" to the allegations contained in the EEOC charge.  *Id*.

---

Defendant terminated Plaintiff on or about February 13, 2023.  (DE 8 ¶ 29, DE 1-2).  Plaintiff filed this claim on January 14, 2025, well within the statute of limitations.  (DE 1-2).

Applying these standards here, the Court finds that Plaintiff's claim of religious-based discrimination as alleged in Count 3 could reasonably be expected to grow out of the allegations in his EEOC charge of discrimination.  Put another way, the Court finds Count 3 to be "like or related" to be the allegations contained in the EEOC charge, including the following allegations:

> I'm a brown-skinned, Asian, *Muslim* person of Bangladeshi national origin.
>
> …
>
> I believe the true reason was discrimination against me because I didn't fit in with the typical trainee based on my race, color, ethnicity *or religion*, and national origin.
>
> …
>
> I was failed and terminated because of me being brown skinned, Asian, *Muslim* person of Bangladeshi national origin.

(DE 12-2 at 1-2) (emphasis added).[5]   Accordingly, the motion should be denied as to this argument.  *See Gregory*, 355 F.3d at 1280 (noting that courts should be "extremely reluctant to allow procedural technicalities to bar claims brought under Title VII").

## IV.   <u>RECOMMENDATION & NOTICE OF RIGHT TO OBJECT</u>

For the reasons stated above, the undersigned respectfully **RECOMMENDS** that the motion (DE 12) be **GRANTED IN PART** and **DENIED IN PART** as follows:

1.   The motion should be **DENIED** as to Counts 1, 2, and 3 of the Amended Complaint.

2.   The motion should be **GRANTED** as to Counts 4 and 5 of the Amended Complaint.  Given that Plaintiff has had a previous opportunity to amend his pleading, these dismissals should be ordered **WITH PREJUDICE**.

---

[5] Defendant attached Plaintiff's EEOC charge as an exbibit to the motion to dismiss.  (DE 12-2). Courts may consider such exhibits on a motion to dismiss where, as here, the pleading refers to the EEOC action and where the authenticity of the EEOC charge is not in dispute.  *See Booth v. City of Roswell*, 754 F. App'x 834, 837 (11th Cir. 2018).

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 16th day of May 2025.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE